IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMOJI COMPANY GmbH,<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>    Defendants. | Case No.: 22-cv-3652<br><br>Judge Virginia M. Kendall |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, EMOJI COMPANY GmbH, ("EMOJI" or "Plaintiff"), Replies in Support of its Motion for Entry of a Preliminary Injunction and in Response to the Motion to Dismiss ("Motion") by Defendant Nos. 57 "Bedorm" and 116 "Move Over" ("Defendants") as follows:

**I. INTRODUCTION**

Defendants' Motion is procedurally and substantively deficient for multiple reasons. Procedurally, Defendants fail to abide by this Court's Local Rules against filing a Motion/Memorandum in excess of 15 pages without leave of Court and failing to obtain local counsel when primary counsel's office is located outside the Northern District of Illinois. Substantively, Defendants' arguments relating to joinder/severance are moot because the two subject Defendants (which appear to be related) are the only defendants remaining in the case. Defendants misinterpret the Hague Convention, which does not prohibit service by electronic means. Lastly, Plaintiff is likely to prevail on its Motion for Entry of a Preliminary Injunction

against Defendants because Plaintiff satisfies all of the requisite elements and Defendants' claims of 'fair use' and 'descriptive fair use' fail. Defendants could have described their products using terms other than "EMOJI" but would not have enjoyed the increased traffic to their website had they done so.

As a result, Plaintiff respectfully requests this Court to deny Defendants' Motion to Dismiss and enter a Preliminary Injunction against Defendant Nos. 57 "Bedorm" and 116 "Move Over" and any other relief this Court deems just.

## II. ARGUMENT

A. <u>Defendants' Motion is Procedurally Improper</u>

Defendants' Motion should be stricken because Defendants' counsel, whose office is located in Flushing, New York, has not identified local counsel as required by Local Rule 83.15(a), which states:

> "An attorney not having an office within this District ("nonresident attorney") shall appear before this Court **only** upon having designated as local counsel a member of the bar of this Court having an office within this District upon whom service of papers may be made. Such designation shall be made at the time the initial notice or pleading is filed by the nonresident attorney." (emphasis added). U.S. District Court, Northern District of Illinois, Local Rule LR 83.15(a): Designation for Service.

Penalties for failure to comply with Local Rule 83.15(a) can result in the nonresident attorney's pleading being struck by the Court.

> "Where the nonresident attorney tenders documents without the required designation of local counsel, the clerk shall process them as if the designation were filed and shall promptly notify the attorney in writing that the designation must be made within 30 days. If the attorney fails to file the designation within that time, the documents filed by the attorney may be stricken by the court." U.S. District Court, Northern District of Illinois, Local Rule LR 83.15(b): Penalties.

In the present case, Defendants' counsel filed an appearance on August 3, 2022, without identifying local counsel. [Dkt. No. 31]. Defendants filed the present Motion on September 13,

against Defendants because Plaintiff satisfies all of the requisite elements and Defendants' claims of 'fair use' and 'descriptive fair use' fail. Defendants could have described their products using terms other than "EMOJI" but would not have enjoyed the increased traffic to their website had they done so.

As a result, Plaintiff respectfully requests this Court to deny Defendants' Motion to Dismiss and enter a Preliminary Injunction against Defendant Nos. 57 "Bedorm" and 116 "Move Over" and any other relief this Court deems just.

## II. ARGUMENT

A. <u>Defendants' Motion is Procedurally Improper</u>

Defendants' Motion should be stricken because Defendants' counsel, whose office is located in Flushing, New York, has not identified local counsel as required by Local Rule 83.15(a), which states:

> "An attorney not having an office within this District ("nonresident attorney") shall appear before this Court **only** upon having designated as local counsel a member of the bar of this Court having an office within this District upon whom service of papers may be made. Such designation shall be made at the time the initial notice or pleading is filed by the nonresident attorney." (emphasis added). U.S. District Court, Northern District of Illinois, Local Rule LR 83.15(a): Designation for Service.

Penalties for failure to comply with Local Rule 83.15(a) can result in the nonresident attorney's pleading being struck by the Court.

> "Where the nonresident attorney tenders documents without the required designation of local counsel, the clerk shall process them as if the designation were filed and shall promptly notify the attorney in writing that the designation must be made within 30 days. If the attorney fails to file the designation within that time, the documents filed by the attorney may be stricken by the court." U.S. District Court, Northern District of Illinois, Local Rule LR 83.15(b): Penalties.

In the present case, Defendants' counsel filed an appearance on August 3, 2022, without identifying local counsel. [Dkt. No. 31]. Defendants filed the present Motion on September 13,

2022. [Dkt. No. 46]. To date, Defendants' counsel has not designated local counsel. Therefore, pursuant to Local Rule 83.15, Defendants' Motion should be stricken by this Court as procedurally improper.

B. <u>Joinder is Proper</u>

Assuming arguendo that this Court determines that Defendant's Motion is not procedurally deficient, joinder in this case is proper. In any event, any arguments regarding joinder/severance are moot because the subject two Defendants are the only defendants remaining in the case.

For the record, Federal Rule of Civil Procedure 20(a)(2)(A)-(B) states that parties may be joined in one action as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

In the present case, all Defendants have been accused of the same illegal act of selling similar counterfeit trademarked EMOJI products on Amazon.com in a series of transactions and occurrences as described in Plaintiff's Complaint. Moreover, there are common questions of law and fact related to all Defendants.

Courts in this District have found joinder of defendants in factually similar cases proper. For example, Judge Lefkow found joinder proper in *Too Faced Cosmetics, LLC v. Operators of KTKT Store, et al*., No. 19-cv-07762 (N.D. Ill. Nov. 25, 2019) (*See* [Dkt. Nos. 22, 27 and 30]) and *Gold's Gym Licensing LLC v. Operators of dropshipping fastship Store, et al*., No. 19-cv-07446 (N.D. Ill. Nov. 11, 2019) (*See* [Dkt. Nos. 32, 38 and 43]).

The leading case interpreting Fed. R. Civ. P. 20, *Mosely v. General Motors Corp.*, held that "all *'logically related'* events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit *all reasonably related claims* for relief by or against different parties to be tried in a single proceeding." *Mosely v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (citations omitted) (emphasis added); *see also*, *United States v. Mississippi*, 380 U.S. 128, 142 (1965) (joinder proper even though defendants were independent actors, because defendants' actions were part of same series of transactions or occurrences); *Civil Aeronautics Bd. v. Carefree Travel, Inc.*, 513 F.2d 375, 384 (2d Cir. 1975) (joinder proper when "operative facts are related even if the same transaction is not involved"); *City of New York v. Joseph L. Balkan, Inc.*, 656 F. Supp. 536, 549 (E.D.N.Y. 1987) (allowing joinder for a "series of occurrence of similar types and with similar purposes"). For the record, Plaintiff respectfully submits that joinder of all Defendants is appropriate pursuant to Fed. R. Civ. P. 20.

    C. <u>Defendants were Properly Served Pursuant to Rule Fed. R. Civ. P 4(f)(3)</u>

        1. <u>Attempting Service Through the Hague Convention Is Not Mandatory.</u>

Rule 4(f) of the F.R.C.P. governs international service of process on foreign individuals. "The Hague Convention does not displace Fed. R. 4(f)(3)." *Gianni Versace, S.P.A. v. Yong Peng, at al.,* No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019); *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d at 498. Rule 4(f) does not require that a party attempt service of process through the Hague Convention as prescribed in Rule 4(f)(1) before petitioning the Court for alternative relief under Rule 4(f)(3). *Gianni Versace,* No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019); *Rio Props Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1014 (9th Cir. 2002). Service under F.R.C.P. 4(f)(3) "must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are

4

evident from the text." *FTC v. Repair All PC, LLC*, 2017 U.S. Dist. LEXIS 83173, at *8 (N.D. Ohio May 31, 2017). Rule 4(f)(3) empowers the Court with flexibility and discretion to fit the manner of service utilized to the facts and circumstances of the particular case. *Id.* Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3), and the Hague Convention does not displace Rule 4(f)(3). *See Nagravision SA*, 882 F.3d 494, 498 (5th Cir. 2018) (defendant's argument "misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3)."); *Rio Props., Inc.*, 284 F.3d 1007, 1014-1015. As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Rio Props., Inc.*, 284 F.3d at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* The task of determining whether a given case requires alternative service of process "is placed squarely within the sound discretion of the district court." *FTC v. Repair All PC, LLC,* 2017 U.S. Dist. LEXIS 83173, at *9. Neither F.R.C.P. 4 nor any other rule requires that a party first attempt service through the Hague Convention and it is not reasonable for Plaintiff to wait months or years for its trademark infringement claims to be addressed while the Chinese Central Authority serves documents on the physical addresses of Defendants, a process that can take 1-2 years.

Further, the Hague Convention does not apply when the identity and address of a defendant is unknown. Despite Defendants' assertions, no physical address was provided for

either Defendant on their Amazon e-commerce store. *See* Exhibit A. Furthermore, no addresses for any of the defendants were provided when e-commerce platform provider, Amazon.com responded to Plaintiff's subpoena. As such, the only method of contacting Defendants is through the e-mail address associated with their e-commerce store.

Numerous Courts have authorized alternative service pursuant to Fed. R. Civ. P. 4(f)(3) even when the defendant resides in a country that is a signatory to the Hague Convention. *See Id.* at *40-41; *see also MCM Holding AG, et al. v. Dequn Zhao, et al.*, No. 18-cv-1677 (N.D. Ill. Aug. 14, 2018); *Nagravision SA*, 882 F.3d at 498; *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (same); *In re LDK Solar Secs. Litigation*, 2008 U.S. Dist. LEXIS 90702, at *11 (N.D. Cal. June 12, 2008) (same).

  2. <u>Service via Email Is Not Prohibited by The Hague Convention</u>

Courts have agreed that service by email is not prohibited by the Hague Convention. *Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 U.S. Dist. LEXIS 97241, at *5 (N.D. Ill. Dec. 1, 2008) ("[t]he Hague Convention does not prohibit service by e-mail or facsimile").

Accordingly, service of process by email was appropriately ordered by this Court on July 26, 2022, in the TRO [Dkt. No. 29, ¶ 13] and can be effectuated under F.R.C.P. 4(f)(3). Such service is not prohibited by the Hague Convention. Here, Defendants do not dispute that they received a copy of the Complaint, Temporary Restraining Order, Motion for Entry of a Preliminary Injunction, Memorandum in Support of Entry of a Preliminary Injunction by e-mail on August 18, 2022. [Dkt. No. 38]. Thus, service was proper pursuant to the Order.

  3. <u>Service via Email Comports with Constitutional Notions of Due Process.</u>

This Court also correctly found that service via email comports with constitutional

notions of due process, because it was reasonably calculated, under all of the circumstances, to apprise Defendant of the pendency of this action and afford Defendant an opportunity to present objections. *See Maclean-Fogg Co.*, 2008 U.S. Dist. LEXIS 97241, at *5. Courts have also held that communications to email addresses listed on a defendant's website comport with due process: "[w]hile email communications may also go astray or fail to come to the relevant individuals' attention, the Court finds that in this case, service to the email address listed on defendant's website is 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Sulzer Mixpac AG*, 312 F.R.D. at 332.

D. Entry of a Preliminary Injunction Against Defendants is Appropriate

Plaintiff has satisfied all of the elements required for the entry of a preliminary injunction against Defendants. A preliminary injunction may be issued upon a showing that: "(1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Plaintiffs' favor; and (4) the public interest will not be disserved by the injunction." *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1076 (N.D. Ill. 1996).

1. Plaintiff is Likely to Succeed on the Merits of their Claims

Plaintiff is likely to succeed on the merits of its claims because Defendants are infringing Plaintiff's valid trademarks. Plaintiff is the owner of U.S. Trademark Registration Nos. 4,868,832, 5,202,078 and 5,415,510 for the EMOJI mark. *See* Exhibit B, ¶ 5- Decl. of Jose Santiago. Defendants' do not have a licensing agreement with Plaintiff to use its marks, nor have they been otherwise authorized to do so.

The conduct and infringing use by Defendants constitute trademark infringement in

7

violation of §43(a) of the Lanham Act (15 U.S.C. §1125(a)) and §32 of the Lanham Act (15 U.S.C. §1114), which prohibits the use in commerce of rendering any services of any word, name, symbol or device, or any combination thereof, in connection with the sale of goods that is likely to cause confusion, mistake, or deceive the source of those goods or services. As illustrated in Exhibit A, Defendants' intentional infringement of Plaintiff's EMOJI marks has caused injury to Plaintiff's business, reputation and goodwill and is causing confusion in the marketplace. As a result, Plaintiff is likely to succeed on the merits of its claims and the entry of a Preliminary Injunction is appropriate.

    a. <u>Defendants' Claims that "EMOJI" is a Generic Term Are Without Merit</u>

Defendants' claims that "EMOJI" is a generic term are unsupported and without merit. In fact, the term "EMOJI" is anything but generic. EMOJI COMPANY GmbH is a well-established company with a significant intellectual property portfolio, through which the licensing efforts of its "EMOJI" mark has enabled it to become a global brand with developed markets in North America, Europe, Brazil, Mexico, China and Australia and rapidly expanding in Southeast Asia. *See* Exhibit C-Declaration of Marco Huesges, at ¶ 3.

EMOJI COMPANY GmbH currently owns about 1,000 trademark registrations and applications in over 100 countries, including the United States for the EMOJI trademark (the "EMOJI mark"), as both a word mark and in conjunction with other words or design elements for more than 25 categories of goods and services. (*Id.* at ¶ 4). Plaintiff is the registered owner of U.S. Registration Nos. 4,766,492; 4,893,876; 4,595,110; 5,202,078; 4,868,832 and 5,073,890 for the EMOJI mark and Registration Nos. 5,225,956 and 5,127,348 for "the Emojis" mark.

The EMOJI mark has been examined hundreds of times by relevant Trademark

Offices worldwide; and, in each country, the EMOJI mark has been found to be distinctive and registrable. (*Id.* at ¶ 5). EMOJI's trademarks are registered on the Principal Register and, under Section 7(b) of the Lanham Act. (*Id.* at ¶ 5). Those registrations constitute prima facie evidence of: (a) the validity of the registered mark and of the registration, (b) Plaintiff's ownership of the mark and (c) Plaintiff's exclusive right to use the mark in commerce with regard to the goods concerned. (*Id.* at ¶ 5).

Plaintiff has developed the world´s largest library of protected emoji® brand icons and designs for licensing of any kind. (*Id.* at ¶ 4). Plaintiff licenses its marks to third parties pursuant to formal license agreements, through more than 19 license agencies and more than 950 licensees. (*Id.* at ¶ 6). Plaintiff has been licensing its EMOJI Trademark through an international network of agents and dealers in the U.S. and more than 100 other countries since at least 2015. (*Id.* at ¶ 6). Plaintiff has licensing agreements with numerous companies including Sony Pictures Animation Inc. ("SPA") ("The Emoji Movie"), Walmart, Costco, Nestle, Pepsico, Burger King, Nikon, Fuji, Random House, Aldi, Ferrero, Unilever, Zara, Danone, Chevrolet, The Hershey Company, Puma and Kellogg's, among others, concerning use of the EMOJI Trademark. (*Id.* at ¶ 6). This network of licensed users has resulted in retail sales of EMOJI branded products exceeding $800 million annually and more than $2.5 billion total from license revenue from sales of EMOJI-branded products. (*Id.* at ¶ 6).

Plaintiff also has licensing partnerships concerning use of its EMOJI mark with other leading firms including ACCO Brands (calendars), Alcove Brands (health and vitamins), ASO (first aid products), Bendon (publishing), Bentex Group (children's apparel) Centric Brands (sleepwear), DanDee International (seasonal and non-seasonal toys, collectibles, home décor, pet and baby products), David's Textiles (fabric), Decopac (cake decorating), Fabpops (mobile

9

phone accessories), Gotta Love It (apparel), Handcraft Manufacturing Corp. (children´s clothing ), Isaac Morris, LTD (apparel); Jay Franco (domestic products), Paramount Brands (fragrances), RedBubble (fan art/e-commerce); Running Press (publishing), Strikeforce Bowling (bowling), Success Promotions (promotional products and emoji "Attitude" bobble.), Trends International, LLC (posters and stickers), Unique (partyware), Unitrex SpaRoom (automotive air fresheners), World Tech Toys (toys) and ZAK! Design (dinnerware, drinkware and food storage). (*Id.* at ¶ 7).

Plaintiff was ranked No. 57 out of the top 150 global licensors in the trade journal *License Global* and was ranked No. 3 of the most influential brands by the 2017 *Power List* on licensing.biz behind Lego® and Coca-Cola®. (*Id.* at ¶ 9). Plaintiff has received numerous awards and accolades for its licensing of the EMOJI mark and in 2018, received the Lima Award for Best Digital Program in the United States. (*Id.* at ¶ 10). Plaintiff was also nominated for Best Brand digital property 2019 (Licensing International) and for the Lima Award for Best Digital Property in the United States in 2018. (*Id.* at ¶ 10).

Plaintiff has invested millions into brand building, content creation and brand protection. (*Id.* at ¶ 11). Plaintiff displays the EMOJI marks extensively on its products and in its marketing and promotional efforts which include, but are not limited to, substantial print media, a website, social media sites and point of sale materials. (*Id.* at ¶ 11). Plaintiff has Emoji® mono-brand apparel stores in China including the official Emoji® brand store on TMall, which is a Chinese language website with over 500 million monthly active users for business-to-consumer online retail sales and developing brand awareness. (*Id.* at ¶ 8). Plaintiff also has Emoji® brand tea cafes in China, which introduce Chinese consumers to the Emoji® brand. (*Id.* at ¶ 8). As such, Defendants' claims regarding the genericness of "EMOJI" are

without merit and should be disregarded.

        b.   <u>Fair Use and Descriptive Use Do Not Apply</u>

        Defendants erroneously claim that their use of the term "EMOJI" was descriptive and therefore does not constitute trademark infringement. "A trademark includes: any word, name, symbol, or device, or any combination thereof [used by any person] to identify and distinguish his or her goods, including a unique product, from those manufactured and sold by others and to indicate the source of the goods, even if that source is unknown." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Furthermore, "The Act provides that: a mark registered on the principal register ... shall be prima facie evidence of the validity of the registered mark ... and of the registrant's exclusive right to use the mark in commerce on or in connection with the goods or services specified in the registration…" *Id.* at 628. "Hence, although a term's "primary" meaning is merely descriptive, if through use the public has come to identify the term with a plaintiff's product or service, the words have acquired a "secondary meaning" and would become a protectible trademark. In other words, 'secondary meaning' denotes an association in the mind of the consumer between the trade dress [or name] of a product and a particular producer." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1085 (7th Cir. 1988).

        In the present case, Plaintiff's EMOJI mark has acquired secondary meaning "i.e. has become distinctive of the plaintiff's goods and/or services." *Id.* at 1085. Plaintiff expended substantial time, money and other resources developing, advertising and otherwise promoting the EMOJI Trademarks. *Santiago Decl.* ¶ 8. As a result, products associated with the EMOJI Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from EMOJI COMPANY GmbH. *Id.* Defendants could have used many other terms instead of the word "EMOJI" to describe a smiley face on a website but chose not to

do so because they would have forfeited the increased web traffic that use of the EMOJI name generates. As a result, Defendants' claim of fair use and descriptive use fails.

### c. Defendants' Use of the EMOJI marks was Not in Good Faith

Defendants' use of the EMOJI marks was not in good faith and caused confusion in the marketplace as to the source of origin of the products being sold. "[T]he inquiry into the defendant's good faith concerns the question whether the user of a mark intended to create consumer confusion as to source or sponsorship." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 401 (2d Cir. 2009). When analyzing whether the defendants' use of a term has caused confusion in the marketplace, "confusion" means whether "consumers [have been] misled into believing that the two [products] came from the same source" *Id.* at 400.

In the present case, Defendants' use of the EMOJI marks has lead the public to believe the products were either manufactured by Plaintiff, or to their specifications. Plaintiff is irreparably harmed by the unauthorized use of the EMOJI marks because counterfeiters take away Plaintiff's ability to control the nature and quality of products used with their trademarks. *See* Exhibit B ¶ 12, Decl. of Jose Santiago.

The sale of counterfeit products using the EMOIJ marks causes consumer confusion in the marketplace, which weakens Plaintiff's brand recognition and reputation. *Id*. When counterfeit products use Plaintiff's Trademarks, their products and brand become associated with these inferior counterfeit products, resulting in increased skepticism and hesitance to purchase EMOJI product, thus undermining the EMOJI COMPANY GmbH's reputation and goodwill. *Id.* at ¶ 12.

Most consumers are unable to distinguish fake EMOJI Products from those produced by Plaintiff or their licensed partners by simply reviewing their outer appearance and often regard

counterfeit products as being "bargains" because of their low price. The resulting loss of sales and damage to the EMOJI brand is unquantifiable. *Id*. at ¶ 13.

The Defendant's use the EMOJI marks to capitalize off Plaintiff's goodwill and reputation to sell counterfeit products in the marketplace should be prevented and can be by entering a Preliminary Injunction against Defendants.

    d. <u>Neither "Bedorm" nor "Move Over" have a Valid License to Market and Sell EMOJI-Branded Products</u>

Defendants' do not have a license to market and sell EMOJI-branded products. *See* Exhibit C, ¶ 16, Decl. of M. Huesges. Plaintiff licenses its products to a select group of companies based upon agreed standards for production and quality, and Plaintiff closely monitors the efforts of its licensees. (*Id* at ¶ 15). EMOJI COMPANY GmbH is very selective with regard to whom they license because those licensing partners are required to manufacture the products to meet EMOJI's specifications and standards. (*Id.* at ¶ 16).

    2. <u>In the Absence of a Preliminary Injunction, Plaintiff Will Suffer Irreparable Harm</u>

"Irreparable harm is generally presumed in cases of trademark infringement and dilution. *See* <u>Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6,16</u> (7th Cir. 1992) (recognizing the "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss"); <u>American Dairy Queen Corp. v. New Line Prod., Inc., 35 F.Supp.2d 727, 729 (D.Minn.1998)</u> (presuming irreparable harm by dilution). *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F. 3d 456, 469 (7th Cir. 2000).

In the present case, Defendants have clearly infringed Plaintiff's registered trademarks in their efforts to cause confusion in the marketplace. As such, Plaintiff will suffer irreparable injury if a preliminary injunction is not entered.

3. <u>The Balance of Hardship Tips in Plaintiff's Favor</u>

When balancing the harm against both parties, Plaintiff is most likely to suffer more in the absence of the entry of a preliminary injunction against the Defendants. As willful infringers, Defendants are entitled to minimal equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the Plaintiff's trademarks." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have damaged Plaintiff's reputation and deprived Plaintiff of revenue from Defendants' sales of counterfeit EMOJI Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

4. <u>Issuance of a Preliminary Injunction is in the Public Interest</u>

Entry of a preliminary injunction is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark law. The public is currently under the false impression that Defendants are operating their Defendants' Internet Stores with Plaintiff's approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). Federal courts have long held that

14

"the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976).

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of a trademark used in connection with those goods. Unless Defendants' unauthorized use of Plaintiff's trademarks is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Preliminary Injunction is in the public interest.

### III. CONCLUSION

In view of the foregoing, Plaintiff respectfully requests the Court to deny Defendants' Motion to Dismiss, enter a Preliminary Injunction against the subject two Defendants and grant any other relief this Court deems necessary.

Respectfully submitted,

Dated: September 30, 2022

By: <u>s/Michael A. Hierl</u>
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Robert P. McMurray (Bar No. 6324332)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
mhierl@hsplegal.com
wkalbac@hsplegal.com
Attorneys for Plaintiff
EMOJI COMPANY GmbH

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies on September 30, 2022 that a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system.

/s/ *Michael A. Hierl*